The opinion of the court was delivered by
Mr. Justice McGowan.
The facts of this case are somewhat complicated, and, in order to make plain the principal points involved, it will not be improper to make a short statement. William Buchanan, iu 1868, owned a small tract of land (315 acres), which was sold under execution for debt iu May, 1868, aud at sheriff’s sale was bid off by a brother, F. A. Buchanan, for $400, who took sheriff’s title for the same. William Buchanan aud his family continued to live on the place, without paying rent or other consideration for the use *414 of it, up to 1884, when he died intestate. After his death, his widow and her children occupied the land, and paid rent for it, up to the present year (1891). On May 28, 1887, F. A. Buchanan conveyed the laud to G. D. Buchanan, one of the children of William, for an expressed consideration of $1,500.
This action is now brought by the widow of William, the plaintiff, alleging that at the sale of the land by the sheriff in 1868, the purchase money was paid by her husband, William Buehauau, whereby a trust resulted; that F. A. Buchanan held the title as trustee for William (and after his death, for his heirs), and that G. D. Buchanan now holds it in the same capacity as trustee; that the conveyance from F. A. to G. D. Buchanan was without consideration, and a fraud upon the rights of the plaintiff and the other heirs of William; that from the time of the sale in 1868, William Buchanan, and after his death his heirs, have had possession of the land as owners. Upon these facts, plaintiff claims that the laud is subject to partition among the heirs at law of William Buchanan; and this action, accordingly, is for that purpose.
*409 4 *410 5 *409 In answer to so much of the argument of appellant as is confined within this limit, we might say, in the first place, that we are by no means satisfied that the right to a j ury trial, or, as stated in the language of the Constitution, “The right of trial by jury shall remain inviolate,” is at all affected by substituting one county for another, where such trial may be had. This question is somewhat involved in the cases of Cregier v. Bunton, 2 Strob., 487; State v. Boatwright, 10 Rich., 410; State v. Williams, 35 S. C., 345. It may be that the provisions of the law, which secure a tribunal consisting of a jury of twelve good and lawful men, drawn from the county where the trial is had, is all that is contemplated by the Constitution. And, .secondly, it .seems to us that section 3 of article Y., *410 wherein express authority is given the General Assembly to provide for a codification of our laws and the practice in our courts, may be very well cited as authority for the present legislation. For it will be remembered, that such section .of the Code (section 147) is directly traceable to the authority of the provision of our State Constitution, authorizing such legislative enactment. Under the practice in this State before 1868, the change of venue, both in law and equity, was had, but a doubt was suggested, at least by implication, by the court of last resort, in State v. Williams, 2 McCord, 383, as to the power of the court to change the veuue iu criminal cases. Section 3, of article V., of the Constitution was preparing the way for the union, iu the Courts of Common Pleas in this State, of tbe powers previously exercised by the Courts of Common Pleas and General Sessions, and, also, of the Courts of Equity. Such being tbe case, the comprehensive language of section 3 of article V. may very well be construed to embrace the power to the legislature in the Code of Procedure, to be adopted by it to regulate the practice as to a change of venue.
*414 1 2 At the reference, a demurrer was interposed, that the complaint did nob state facts sufficient to constitute a cause of action, which was properly overruled by the master.. The defendants also claimed that there was an improper joinder of two separate causes of action, which the master properly overruled. It was a proceeding in equity.
The master took the testimony, which is all in the record; and, after holding that there was no proof that the purchase money at the sheriff’s sale belonged to William Buchanan, so as to raise a resulting trust in his favor, and also holding that the proof did not make out a case of title by adverse possession, the master, J. C. Klugh, Esq., proceeded, in a manner highly judicial and creditable to himself, as follows:
“The most probable and reasonable explanation of the matter appears to be, that William Buchanan made a contract to jmrchase’the land after the sheriff’s sale; that he held possession under this contract, and paid the purchase money, all but the sum of $275, which was paid, after his death, from the *415 products of the place, and that, upon the payment of the $275, his heirs were immediately entitled to specific performance of the contract. After a careful consideration of the whole case, I am convinced that this is the correct explanation. It seems to me that the case of Spears v. Oakes, 4 Rich., 347, is in point.. In that case, which was an action at law of trespass to try title, and in which the rules of evidence are much more stringent than in an equity case, the court presumed a conveyance from the existence of a mortgage given by the assumed grantee to his grantor, and that, too, where the parties, in whose favor the presumption was made, had been out of possession for nearly, or quite, thirty years, and where the equities were altogether with the defendant. In this case, the parties claiming the benefit of the presumption have been continuously in possession. F. A. Buchanan alleged that he had a claim in or upon the land, which, in a case of this nature, was tantamount to a mortgage. It was only a claim, then, not the entire interest or ownership of the land. His claim was paid off by the parties in possession out of the products of the land. He acknowledged that he had been paid all that he had paid out, and had no further claim — that is, no more interest in the land. Where, then, could the interest of the land lie but in the heirs of William Buchanan? Roberts v. Smith, 21 S. C., 461. * * *
“I find as matters of fact: I. That F. A. Buchanan bought said land at sheriff’s sale in 1868, and paid for it the sum of $400. II. That William Buchanan went into possession of said land after the sale under a contract to purchase the same, and in his lifetime paid part of the purchase money. III. That at his death there remained due to F. A. Buchanan on said contract the sum of $275, and that this sum was paid to him out of the products of the land. IV. That the holding by William Buchanan was in virtue of his contract to purchase, and not adverse to the title of F. A. Buchanan. V. That the conveyance by F. A. Buchanan to G-. D. Buchanan was made with full knowledge in both parties of the rights of William Buchanan’s heirs, upon a nominal consideration and in good faith, for the purpose of effecting a division or settlement amongst *416 the heirs of William Buchanan. VI. That said land is subject to partition amongst the heirs of William Buchanan, &c.
“As conclusions of law: * * * 2. That the heirs of William Buchanan are entitled to specific performance of the contract of purchase aforesaid, and to partition of the land. 3. That the conveyance of F. A. Buchanan to G. D. Buchanan, if allowed to stand, would operate a fraud upon the rights of the other heirs of William Buchanan, and should be set aside and cancelled,” &e.
3 To this report F. A. Buchanan and G. D. Buchanan excepted; also, the plaintiff and Bessie B. Verrell, in certain particulars. Upon these exceptions, the case came up for a hearing before his honor, Judge Hudson, who overruled all the exceptions, and confirmed the report of the master, ordering that a writ of partition do issue, in the manner directed by lawn to partition the lands described in the complaint among the heirs of William Buchanan, named in the complaint, according to their respective rights, as therein set forth. From this decree, the defendants, F. A. Buchanan and G. D. Buchanan, appeal to this court upon numerous exceptions, which are all printed in the record, and need not be set out here.
4 It will be observed, that most of the exceptions complain of error in the findings of fact, but the Circuit Judge concurred in all these findings. While this court may review and reverse findings of fact in an equity case, it is perfectly well settled that it will rarely disturb a finding of fact in which the Circuit Judge concurs with the master, unless there is no evidence to support it, or the weight of the evidence is against it. We have read the testimony in this case carefully, and we cannot say that the findings of fact are unsupported by the evidence. On the contrary, it seems to us that the view taken by the master, aud concurred in by the Circuit J udge, is the only one that is entirely consistent with the testimony. The great length of time William Buchanan and, after his death, his family were allowed to remain in the undisturbed possession of the land, is very significant. F. A. Buchanan acknowledged that he had been repaid all that he paid out, and had no further claim in the land w'hich he conveyed to G. D. *417 Buchanan, one of the children of William Buchanan; but it was not shown that he, the said G. D. Buchanan, ever paid anything for it, and, of course, he had no interest in it beyond a share as one of the heirs at law of William Buchanan, deceased.
The judgment of this court is, that the judgment of the Circuit Court be affirmed.